UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

NERALDY C.[1],  )
o/b/o J.R.S., a minor,  )
  )
    Plaintiff,  )
  )
  v.  )  CIVIL NO. 3:20cv822
  )
KILOLO KIJAKAZI, Acting  )
Commissioner of Social Security,  )
  )
    Defendant.  )

OPINION AND ORDER
===

    This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

    The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, supra at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant was born on April 19, 2013. Therefore, she was a preschooler on

2

    August 10, 2017, the date application was filed, and is currently a preschooler (20 CFR 416.926a(g)(2)).

2.  The claimant has not engaged in substantial gainful activity since August 10, 2017, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3.  The claimant has the following severe impairments: conduct disorder; autism spectrum disorder (ASD); and speech/language disorder (20 CFR 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.  The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.  The claimant has not been disabled, as defined in the Social Security Act, since August 10, 2017, the date the application was filed (20 CFR 416.924(a)).

(Tr. 18-28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on July 27, 2021. On August 31, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on September 24, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

Under 20 C.F.R. § 416.924(a), the Agency applies a three-step sequential evaluation process to determine whether a claimant under age 18 is disabled. At step one, an adjudicator must determine whether the claimant is engaged in substantial gainful activity (SGA). *Id*. If the claimant is engaged in SGA, the adjudicator will find that he or she is not disabled, and will not

go on to step two. *Id*. If the claimant is not engaged in SGA, the adjudicator must determine, at step two, whether the claimant has an impairment or combination of impairments that is severe. *Id*. If the claimant does not have an impairment or combination of impairments that is severe, the adjudicator will find that he or she is not disabled, and will not go on to step three. *Id*. If the claimant has an impairment or combination of impairments that is severe, the adjudicator must determine, at step three, whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. *Id*. If not, the adjudicator will find that the claimant is not disabled. *Id*. If the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment, and meets the duration requirement, the adjudicator will find the claimant disabled. *Id*.

When determining whether a claimant's impairment or combination of impairments functionally equals a listed impairment, the adjudicator considers how the claimant functions in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal a listed impairment, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A claimant has a "marked" limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities; and, a claimant has an "extreme" limitation in a domain when his or her impairment(s) "interferes very seriously" with these same abilities. 20 C.F.R. § 416.926a(e)(2), (e)(3). In making this assessment, an adjudicator must compare how appropriately, effectively

4

and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b).

Plaintiff was born on April 19, 2013 and was four years old on her filing date. (Tr. 81). She is a school-aged minor child who has never worked. (Tr. 18, 174).

Plaintiff was assessed for eligibility for Indiana First Steps services in November 2014. (Tr. 754). She participated in physical and developmental therapy through First Steps between 2015 and 2016 to address her speech delay and issues with walking. (Tr. 526-55).

Plaintiff underwent psychological evaluation by Dr. Jessica Jones to rule out autism on July 6, 2016. (Tr. 267). An abbreviated intelligence test indicated an IQ of 88, within the low average range of functioning, although "her language deficits likely interfered with her ability to perform tasks on this measure and may be an under-estimate of her true cognitive functioning." (Tr. 269). Plaintiff was assessed to have minimal to no symptoms of autism spectrum disorder. (Tr. 270). However, "behavioral measures completed by her mother and grandmother indicated difficulties with internalizing and externalizing behaviors," and a "developmental profile noted a delay in adaptive behaviors with below average social-emotional, physical, and communication skills." (R. at 271). Plaintiff was diagnosed with global developmental delay and expressive language disorder. *Id*.

An Individualized Education Program Case Conference Committee Report was prepared on March 23, 2017. (Tr. 274). Plaintiff was deemed eligible for special education services based on language and speech impairments. (Tr. 276). The next such report was prepared on March 20, 2018. (Tr. 245). Plaintiff was once more deemed eligible for special education services due to language and speech impairments. (Tr. 247).

5

At a primary care visit on April 20, 2017, Plaintiff's mother said that she felt that Plaintiff "does not listen to her at all," was "still in diapers," and would "scream" at her whenever she tried to "get her to do anything." (Tr. 309). She also said that they went to the developmental clinic at Riley, where Plaintiff was diagnosed with autism spectrum disorder. *Id*.

Plaintiff presented for intake at Four County Counseling Center on May 19, 2017 due to behavioral difficulties. (Tr. 321). Intake clinician Robin Young assessed an unspecified conduct disorder. An autistic disorder and a mixed receptive-expressive language disorder were left to be ruled out later. (Tr. 327). Following intake, Plaintiff continued to participate in mental health services at Four County through at least March 2019. (Tr. 448-79, 506-21).

Speech-language pathologist Margo Kinzer Courter conducted a speech and language consultative examination of Plaintiff on November 14, 2017. (Tr. at 336). Oral, motor, voice, and fluency were judged to be within the functional range. (Tr. 338). Articulation skills were mildly impaired. *Id*. Receptive and expressive language skills were in the borderline average range. (Tr. 339). Ms. Courter concluded, "[Plaintiff] will have difficulty communicating her wants and needs to someone not familiar with her. Social skills and learning potential will be adversely affected due to difficulties with language comprehension and expression." *Id*.

Also in November 2017, after a discussion between Plaintiff's teacher, the Area Five Agency Head Start Administration, and a mental health consultant, a plan was put into place for a mental health manager to observe Plaintiff monthly in the classroom. (Tr. 412).

Plaintiff's kindergarten teacher at Columbia Elementary, Kathy Bahnaman, completed a teacher questionnaire on April 17, 2019, based on five months of experience with Plaintiff (Tr. 258-65). She indicated serious problems with elements of acquiring and using information. (Tr.

6

259) She also indicated obvious, but not serious, problems with other areas of acquiring and using information, as well as with attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. (Tr. 259-262). She also noted Plaintiff had bathroom issues related to cleaning herself properly when it came to caring for herself. (Tr. 263).

Plaintiff submitted new medical evidence from Four County Counseling on December 5, 2019. (Tr. 33). While submitted after the unfavorable decision, they relate to the period before the decision date. These records consist of the results of a psychological evaluation conducted over May 7 and June 4 of 2019 to "assess for symptoms of Attention Deficit/Hyperactivity disorder, sensory disorder, cognitive concerns, and social/emotional strengths and weaknesses," with the final report generated on July 16, 2019. (Tr. 34). The evaluating clinicians, Chanel Dismuke and Dr. Aimee Dershowitz, diagnosed Plaintiff with combined-type ADHD, speech sound disorder, and nocturnal enuresis based on the evaluation. (Tr. 41).

Plaintiff was not available for her hearing as she was at school, but her representative indicated that they should proceed without Plaintiff because she was a young child, her mother was available to testify, and they lacked reliable transportation to attend an in-person hearing together. (Tr. 47-49). The ALJ agreed to proceed. (Tr. 49). Plaintiff's representative provided an opening statement in which he argued that in addition to the marked limitation the Disability Determination Bureau found in the ability to interact and relate with others, Plaintiff had marked limitations in her ability to attend to and complete tasks and in her ability to care for herself. (Tr. 53-54).

Plaintiff's mother testified that Plaintiff was in kindergarten and participated in speech therapy once a week. (Tr. 55). She said that Plaintiff still wet the bed and needed help wiping

7

herself. (Tr. 57-58). She reported struggles with spelling and math. (Tr. 58). She also said that she gets "pretty upset" and "starts throwing things." *Id*. She was participating in behavioral therapy. (Tr. 60). She also had issues with focusing and sometimes acted defiant. (Tr. 61-62).

In support of remand, Plaintiff first argues that the ALJ committed harmful error in failing to even acknowledge the existence of the questionnaire completed by Plaintiff's kindergarten teacher, Ms. Kathy Bahnaman. (Tr. 257). In considering the disability cases of children, the Social Security Administration considers the opinions of teachers to be of highly probative evidentiary value, "if you go to school or preschool, we will ask your teacher(s) about your performance in your activities throughout your school day. We will consider all the evidence we receive from your school, including teacher questionnaires, teacher checklists, group achievement testing, and report cards." 20 C.F.R. § 416.924a(b)(7)(ii). Plaintiff points out that, in adult disability determinations, Social Security Ruling 96-8p provides "if the residual functional capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Thus Plaintiff contends that here, where the professional closest to and in the best position to evaluate the functional limitations of a child claimant has offered an opinion of limitations, an ALJ should consider and articulate a rationale for her departure from such a source.

In filling out the Social Security Administration's teacher questionnaire, Ms. Bahnaman opined Plaintiff had "serious" limitation "comprehending oral instructions" and "providing organized oral explanations and adequate descriptions." (Tr. 259) She opined Plaintiff had "obvious" limitation in "reading and comprehending written material"; "comprehending and doing math problems"; "understanding and participating in class discussions"; "expressing ideas in

8

written form"; "learning new material"; and "applying problem solving skills in class discussions." *Id*. She opined:

> [Plaintiff] has to have direction repeated 2-3 times before she understands. We often times have to phrase it in multiple ways. It takes a while for her to comprehend. When she tells us things, her thoughts are scattered and unorganized. Sometimes she says things that don't make sense.

Plaintiff argues that these opinions could reasonably be interpreted as a "marked" limitation in the domain of "acquiring and using information." Plaintiff contends that the ALJ has provided this Court no reason to believe she was even aware of this potentially outcome-determinative opinion as she did not even acknowledge its existence in discussing Plaintiff's potentially having a second marked limitation in the domain of "acquiring and using information." In reaching her conclusion Plaintiff had a "less than marked limitation in acquiring and using information," the ALJ alluded to a "teacher questionnaire," but only referred to one filled out by Plaintiff's Head Start "Disabilities Mental Health Manager" completed when Plaintiff was four years old. (Tr. 23, 194). The ALJ relied on her interpretation of this form as indicating only "slight problems" in the domain of "acquiring and using information." (Tr. 23). The Plaintiff argues that the ALJ was not entitled to simply "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596, F.3d 419, 425 (7th Cir. 2010). In failing to consider Ms. Bahnaman's opinion suggestive of a marked limitation in "acquiring and using information," the ALJ failed to construct a logical and accurate bridge from the evidence to her conclusion Plaintiff did not have a "marked limitation in acquiring and using information," an outcome-determinative finding in this case. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

9

In response, the Commissioner argues that a teacher's opinion is non-medical evidence and that the ALJ was not required to articulate how he considered the opinion.  However, the issue here is whether the ALJ considered the opinion at all.  Due to the importance of this evidence and the lack of discussion of the evidence in the ALJ's decision, remand is required.

Plaintiff has also asserted errors in the ALJ's characterization of the opinions of both the Mental Health Manager and the Head Start teacher.  Thus, on remand these opinions should also be reconsidered.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: October 14, 2021.

s/ William C. Lee
William C. Lee, Judge
United States District Court